NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3352
_____

UNITED STATES OF AMERICA

v.

CARL FREDERIC SEALEY,
                                    Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cr-00347-001)

District Judge: Honorable Gerald J. Pappert
_____

Submitted under Third Circuit L.A.R. 34.1(a)
On September 13, 2019

Before:  CHAGARES, JORDAN, and RESTREPO, *Circuit Judges*

(Filed: February 27, 2020)

_____

OPINION[*]
_____

_____

[*] This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*

Following his criminal convictions of one count of conspiracy to commit wire fraud and one count of wire fraud, appellant, Carl Frederic Sealey, was sentenced to 78 months in prison for each count, to be served concurrently, plus three years of supervised release, and restitution of $1,470,825. On appeal, he argues his guilty plea was not knowingly entered, the government breached the plea agreement, and the District Court's denial of a hearing pertaining to the fraud loss amount was improper. For the reasons that follow, we affirm the District Court's Judgment.

## I.

In 2017, a grand jury returned an indictment charging Sealey with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count One), and thirteen counts of wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1343 and 2 (Counts Two through Fourteen). Count One charged Sealey with conspiring to defraud approximately 21 investors of more than $1.5 million based on false representations and causing the transmission of writings, signals, and sounds by wire in interstate and foreign commerce. Each of Counts Two through Fourteen charged Sealey with defrauding one or more investors, and Count Fourteen in particular charged him with defrauding an investor of $250,000 based on false representations and causing the transmission of monies by wire in interstate and foreign commerce.

In June of 2018, pursuant to a written guilty plea agreement, Sealey pleaded guilty to Counts One and Fourteen of the indictment. The agreement stated that the government would move to dismiss Counts Two through Thirteen at the time of sentencing, which it did. Sealey also waived his right to appeal his conviction or sentence, except under conditions not present here.

The plea agreement included stipulations that "as of the date of this agreement," Sealey has demonstrated acceptance of responsibility for his offense, making him eligible for a downward adjustment under the Sentencing Guidelines. App. 62-63. The agreement included no stipulation as to the amount of the fraud loss, and it did not include any recommendation for any particular sentence. Instead, the agreement permitted the government to "[m]ake whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution, and other matters which the government deems appropriate." App. 60.

At the plea hearing, following a thorough plea colloquy, the District Court accepted Sealey's guilty plea. At the sentencing hearing, the District Court found Sealey's total offense level was 27 and his criminal history category was I, resulting in an advisory Sentencing Guidelines range of 70 to 87 months' incarceration. The Court imposed a sentence of 78 months in prison, three years supervised release, with a special assessment of $200, and restitution of $1,470,825. Despite Sealey's waiver of his right to appeal, he now appeals his conviction and sentence.

## II.[1]

On appeal Sealey essentially argues that when he pleaded to Counts One and Fourteen, the government tricked him so that he didn't understand the fraud loss amount that would be considered for purposes of sentencing. The plea colloquy in the District Court, however, reflects that Sealey knowingly and voluntarily pleaded guilty to Counts One and Fourteen and waived his appellate rights, and he points to nothing in the colloquy or the record that demonstrates that he was improperly induced into pleading guilty or that the government breached the plea agreement.

Although Sealey argues his plea was "induce[d]" by the government, he concedes that he "knowingly pleaded to Counts One and Fourteen" of the indictment. *See* Appellant's Br. 10 (citing App. 60). He asserts, however, that he did not realize the loss amount that would be included in a Sentencing Guidelines calculation as a result of his plea.

As explained, the government did drop the remaining twelve counts as agreed. Further, the record includes the thorough plea colloquy in the District Court which complied with Rule 11 of the Federal Rules of Criminal Procedure and reflects that Sealey knowingly and voluntarily pleaded guilty to Counts One and Fourteen and waived his right to appeal.

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Count One of the indictment explicitly charged him with conspiring to defraud investors of more than $1.5 million based on false representations, and Sealey concedes he knowingly pleaded to that count. The government agreeing to drop Counts Two through Thirteen would not affect the loss amount explicitly alleged in Count One, and Sealey points to nothing in the plea colloquy to support his position that he was somehow tricked or improperly induced into pleading guilty.[2] Moreover, the government's plea memorandum pointed out that Sealey was pleading guilty to his involvement in the extensive fraud scheme that defrauded numerous investors of more than $1.5 million. Sealey confirmed at the change of plea hearing that he reviewed and discussed with his lawyer that plea memorandum, and he agreed that the government "correctly and accurately summarized the facts of the case against [him]" and that Sealey "fully admit[s] those facts." App. 45-46. Therefore, Sealey's arguments that he was improperly induced to plead guilty, that he unknowingly pleaded guilty to Counts One and Fourteen, and that he reasonably did not know what the fraud loss amount for his convictions entailed fail.

Sealey also similarly argues that the government breached its plea agreement "through a show of bad faith" by inducing him to sign a plea agreement that "contemplated the entire loss amount for all counts of the Indictment" such that Sealey received "no substantive benefits" to his guilty plea. Appellant's Br. 13. As mentioned,

---

[2] In addition, Sealey acknowledged at the plea hearing that he understood the total maximum statutory prison sentence for the two counts to which he pleaded guilty and that he understood that the Sentencing Guidelines were only advisory in any event.

5

however, the record does not support the claim that the government improperly induced Sealey to sign the plea agreement.

While Sealey acknowledges that this alleged lack of substantive benefits would not, on its own, render his plea agreement void, he argues that it does "lend itself to analysis of the reasonable understanding of the parties during the plea negotiations." *Id.* As explained above, any understanding that pleading guilty to Counts One and Fourteen did not involve the loss amounts which were explicitly alleged in those counts themselves is not reasonable and does not support an assertion of "bad faith." Indeed, the colloquy supports the conclusion that Sealey's plea was knowing and voluntary.

In addition, the government points out that by pleading guilty under the agreement, Sealey avoided the risk of multiple sentences on multiple counts, including special assessments on every count. Moreover, signing such a plea agreement includes a possibility of reaping the benefit that comes with accepting responsibility. Again, Sealey points to nothing in the plea colloquy which supports the assertion that the government somehow breached the agreement because the Court considered the fraud loss value that was explicitly alleged in Count One, to which Sealey concedes he knowingly pleaded guilty.

Next, Sealey argues the government breached the plea agreement because it failed to ask the Court to award him full credit for acceptance of responsibility. The government acknowledges that at the time the plea agreement was executed it had stipulated that Sealey had accepted responsibility. In particular, in the agreement, the

parties agreed and stipulated that, "*as of the date of this agreement*," Sealey had demonstrated acceptance of responsibility for his criminal conduct, making him eligible for a downward adjustment in the offense level under USSG § 3E1.1(a) and (b). App. 62 (emph. added).

However, *after* Sealey entered the agreement and his plea, a probation officer testified at the sentencing hearing that Sealey had failed to comply with his signed agreement to provide all financial documents and truthfully report all information as to monthly expenditures, income, assets, and liabilities. Although Sealey reported that he was earning thousands of dollars a month, he failed to provide supporting documentation as to where this income was coming from, despite many attempts by the probation office to obtain such information from Sealey and his attorney. Further, the probation officer testified that when Sealey was interviewed, he attempted to minimize his involvement in the criminal activity to which he had pleaded guilty. Thus, Sealey's argument that the government breached the guilty plea agreement is without merit. *Cf. United States v. Bennett*, 161 F.3d 171, 197 (3d Cir. 1998) (evidence of acceptance of responsibility may be outweighed by conduct that is inconsistent with such acceptance).

Finally, Sealey challenges the District Court's denial of a loss amount hearing. In particular, he argues that the District Court's failure to hold a loss hearing was improper because Sealey was allegedly "coerc[ed] by the government" into pleading guilty. Appellant's Br. 18. Because Sealey knowingly and voluntarily waived his appellate rights, he waived these claims on appeal. Nevertheless, even assuming arguendo that

these claims were not waived, they are without merit. As explained, Sealey knowingly and voluntarily pleaded guilty to Counts One and Fourteen, and Count One explicitly charged him with conspiring to defraud investors of over $1.5 million based on false representations, so there was no error in failing to have a loss hearing since Sealey agreed to the loss at the plea hearing.

Accordingly, the judgment of the District Court is affirmed.